# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Mary Towanda Webster-Reed et al., individually and as heir to Brandon Lovell Webster

**DEFENDANTS**

Scott Anthony Collins, et al.

**(b)** County of Residence of First Listed Plaintiff    Brunswick
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Columbus County
*(IN U.S. PLAINTIFF CASES)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ira Braswell IV, P.O. Box 703, Louisburg, NC, 9196235413

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question
  *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ]1 | [ ]1 | Incorporated *or* Principal Place of Business In This State | [ ]4 | [ ]4 |
| Citizen of Another State | [ ]2 | [ ]2 | Incorporated *and* Principal Place of Business In Another State | [ ]5 | [ ]5 |
| Citizen or Subject of a Foreign Country | [ ]3 | [ ]3 | Foreign Nation | [ ]6 | [ ]6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product    Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument |    Liability   [ ] 367 Health Care/ | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel &    Slander     Pharmaceutical    Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'    Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) |    Liability   [ ] 368 Asbestos Personal    Injury Product | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine     Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product    Liability   **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle   [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle   [ ] 371 Truth in Lending    Product Liability | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal   [ ] 380 Other Personal    Injury     Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury -   [ ] 385 Property Damage    Medical Malpractice    Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights   **Habeas Corpus:** | | | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting    [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment   [ ] 510 Motions to Vacate     Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/    Accommodations   [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities -   [ ] 535 Death Penalty    Employment    **Other:** | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities -   [ ] 540 Mandamus & Other    Other    [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education    [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions | | |
| |    [ ] 560 Civil Detainee -     Conditions of     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Civil Rights Acts of 1866 &1871; 42 USC 1983

Brief description of cause:
The Decedent, Brandon L. Webster was wrongfully killed by the defendant during an unlawful traffic stop.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
$20,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                DOCKET NUMBER

DATE   12/15/20

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil Action No.

| | | |
|---|---|---|
| BRANDON LOVELL WEBSTER,<br>MARY TOWANDA WEBSTER-REED,<br>individually, as heir to BRANDON LOVELL<br>WEBSTER, and as representative of the Estate<br>of Brandon Lovell Webster deceased; A.R., a<br>minor, by and through his Guardian Ad Litem,<br>K.W., a minor, by and through her<br>Guardian Ad Litem, and B.W. Jr., by and<br>through his Guardian Ad litem, | ) ) ) ) ) ) ) ) ) ) | **COMPLAINT**<br>(WITH JURY DEMAND) |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| SCOTT ANTHONY COLLINS,<br>Individually, and JOHN DOES 1-10, inclusive, | ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs BRANDON LOVELL WEBSTER, deceased, MARY TOWANDA

WEBSTER-REED, individually, as heir to, and as the personal representative of the Estate of

BRANDON LOVELL WEBSTER joined by heirs, A.R., a minor, by and through his Guardian

Ad Litem, RYAN SMITHWICK, K.W., a minor, by and through her Guardian Ad Litem, RYAN

SMITHWICK, and B.W. Jr., a minor, by and through his Guardian Ad Litem, RYAN

SMITHWICK, complaining of the Defendants, allege as follows:

# I.    <u>INTRODUCTION</u>

1.     In this civil rights action, the Plaintiffs seek compensatory damages, general, damages, and punitive damages from the Defendants for violating various federal rights under the United States Constitution, civil rights under the Civil Rights Acts of 1866 &1871 and state claims arising under North Carolina Common Law, in connection with the fatal shooting of the DECEDENT, Brandon Lovell Webster.

2.     The Plaintiffs further seek the payment of attorneys' fees and the costs of maintaining this action as provided by statute, as well as other and further relief as is deemed necessary and proper by the Court.

# II.    <u>JURISDICTION AND VENUE</u>

3.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.  This case also arises under the common law of the State of North Carolina.

4.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 & 1343. This Court's pendent jurisdiction over the Plaintiffs' state law claims is invoked pursuant to 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all material events giving rise to this action occurred on or about January 1, 2019 in Brunswick County, North Carolina, which is specifically within the Southern Division of the United States District Court for the Eastern District of North Carolina.

# III.   <u>PARTIES</u>

5.     At all relevant times, Brandon Lovell Webster ("DECEDENT") was an individual residing in the Town of Shallotte, Brunswick County, North Carolina.

6. Plaintiff B.W. Jr. is a minor individual residing in Brunswick County, North Carolina, and is the natural born son to the DECEDENT. B.W. Jr. sues by and through his natural grandmother and Guardian Ad Litem, Ryan Smithwick. B.W. Jr. sues both in his individual capacity as the son of DECEDENT and in his representative capacity as a successor-in-interest to DECEDENT. B.W. Jr. seeks both survival and wrongful death damages under federal and state law.

7. Plaintiff K.W. is a minor individual residing in Brunswick County, North Carolina, and is the natural born daughter to the DECEDENT. K.W. sues by and through her natural grandmother and Guardian Ad Litem, Ryan Smithwick. K.W. sues both in her individual capacity as the daughter of DECEDENT and in her representative capacity as a successor-in-interest to DECEDENT. K.W. seeks both survival and wrongful death damages under federal and state law.

8. Plaintiff A.R. is a minor individual residing in Brunswick County, North Carolina, and is a brother of the DECEDENT. A.R. sues by and through his natural mother and Guardian Ad Litem, Ryan Smithwick. A.R. sues both in his individual capacity as a brother of the DECEDENT and in his representative capacity as a successor-in-interest to DECEDENT. A.R. seeks both survival and wrongful death damages under federal and state law.

9. Plaintiff MARY TOWANDA WEBSTER-REED ("TOWANDA REED") is an individual residing in Brunswick County, North Carolina and was at all relevant times the natural mother of the DECEDENT. TOWANDA REED sues both in her individual capacity as the mother of DECEDENT, and in a representative capacity as a successor-in-interest to DECEDENT. TOWANDA REED is a proper personal representative and heir pursuant to *N.C.G.S. § 28A-18-2*. TOWANDA REED seeks both survival and wrongful death damages under federal and state law.

10.     Upon information and belief, it is averred that the Defendant, SCOTT ANTHONY COLLINS (hereinafter "Defendant COLLINS"), is a citizen and resident of Columbus County, North Carolina. At all times relevant to the claims herein, Defendant COLLINS was a duly sworn patrolman with the North Carolina State Highway Patrol ("NCSHP") and his actions were taken under color of state law and within the scope and course of his duties as a patrolman.  Defendant COLLINS is sued in his individual capacity.  COLLINS is white.

11.     At all times relevant to the claims herein, JOHN DOES 1-10 ("DOES 1-10") were duly authorized agents and employees of the North Carolina State Bureau of Investigation ("SBI"), who were acting under color of state law within the course and scope of their respective duties as criminal investigators with the complete authority and ratification of the North Carolina Attorney General's office.  DOES 1-10 are being sued in their individual capacity.

12.     The true names of Defendants DOES 1 through 10, inclusive, are unknown to the Plaintiffs, who therefore sue these Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to reflect the true names and capacities of these Defendants when they have been ascertained.  Each of the fictitious named Defendants is responsible in some manner for the post-shooting conduct and liabilities alleged herein.

13.     Approximately six (6) months after authorizing the release of a copy of the SBI's report/investigative file to the DECEDENT'S family during their April 12, 2019 meeting and the entry of a protective order, a copy of the SBI's report/investigative file was released to the DECEDENT'S family. Much of the information contained therein is still being investigated by the DECEDENT'S family, and as such, requires the Plaintiffs to reserve the right to amend this Complaint.

## IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

14.    The Plaintiffs repeat and reassert each allegation contained in paragraphs one (1) through thirteen (13) of this Complaint with the same force and effect as if fully set forth herein.

15.    On January 1, 2019, DECEDENT was at his family's residence at 2353 Shell Point Road, in the Civietown neighborhood of Shallotte, Brunswick County, North Carolina.

16.    While at his family's house, at approximately 9:00 p.m., DECEDENT, accompanied by his longtime girlfriend, Whitney McKeithon, drove to the Civietown Mini-Mart "Mini-Mart") located approximately one-quarter mile from his parents' residence to purchase snacks for a few friends and family members gathered at his parents' residence watching the New Year's Day college football bowl games.

17.     For the DECEDENT to arrive at the Mini-Mart from his parents' house, he had to make a left turn onto Holden Beach Road.  After turning onto Holden Beach Road, the DECEDENT was approximately five hundred yards and a few seconds from the front entrance to the Civietown Mini-Mart.

18.    In the seconds it took for the DECEDENT to travel five hundred yards to the front entrance of the Mini-Mart, Defendant COLLINS activated his patrol vehicle's blue lights and pulled the DECEDENT over in the Mini-Mart's parking lot.

19.    At the time of the traffic stop, Defendant COLLINS was not pursuing the DECEDENT for any violation of North Carolina law.

20.    At the time of the traffic stop, DECEDENT was unarmed.

21.    At the time of the traffic stop, DECEDENT was not a fleeing felon.

22.    At the time of the traffic stop, DECEDENT had not committed a criminal offense.

23.     At the time of the traffic stop, DECEDENT posed no immediate threat of death or serious physical injury to either Defendant COLLINS or any other person.

24.     Shortly after stopping the DECEDENT in the Mini-Mart parking lot and, before confronting the DECEDENT, Defendant COLLINS exited his patrol vehicle with his service revolver drawn, while yelling at shoppers leaving the Mini-Mart "to call 911."

25.     The DECEDENT, while backing out of his parking space, was confronted by Defendant COLLINS pointing his service weapon at him, and yelling, "stop or I'll fucking shoot you."  The DECEDENT panicked and tried to swerve around Defendant COLLINS to leave the parking lot, but Defendant COLLINS continued to run at the DECEDENT's vehicle with his service revolver drawn, while yelling, "stop or I'll fucking shoot you."

26.     During the traffic stop, a witness observed the DECEDENT attempting to surrender by briefly putting up his hands; however, Defendant COLLINS ignored the DECEDENT's surrender and continued escalating the stop by pointing his service weapon at the DECEDENT while yelling, "I'll fucking shoot you."

27.     While still in the Mini-Mart parking lot and shortly after the DECEDENT put up his hands, Defendant COLLINS discharged his firearm, at least twice, through the driver's side tinted window of the DECEDENT's vehicle , striking him two times, including shots to his left side and shoulder, causing DECEDENT serious physical injuries that eventually killed him.

28.     At the time Defendant COLLINS fired into the occupied passenger compartment of DECEDENT's vehicle, it was also occupied by passenger, Whitney McKeithon, who was also seriously injured by shards of glass from the driver's side window shot out by Defendant COLLINS.

29.     Defendant COLLINS, while standing outside of DECEDENT's path of travel and well removed from any threat of harm, fired at least two gunshots into the DECEDENT after he had already driven past him.

30.     After being shot, the DECEDENT drove the quarter-mile back to his family's residence, where his parents placed him into the back seat of their car and transported him to Novant Regional Hospital.  The DECEDENT passed away in his mother's arms before arriving at the emergency room.

31.     After emergency room staff took the DECEDENT from his parents; DECEDENT's parents, while still covered in their son's blood, were approached by deputies from the Brunswick County Sheriff's Department ("BCSD"), with their service revolvers drawn and pointed directly at them, while yelling, "Put your hands up or I'll kill you where you stand."

32.     DECEDENT's parents were handcuffed behind their backs and taken into custody by the BCSD.

33.     DECEDENT's parents were never charged with a crime.

34.     At the time of the shooting, DECEDENT was unarmed.

35.     At the time of the shooting, DECEDENT was not a fleeing felon.

36.     At the time of the shooting, DECEDENT had not committed a criminal offense.

37.     The DECEDENT never verbally threatened Defendant COLLINS nor made any effort to steer his vehicle in the direction of Defendant COLLINS prior to being fatally shot. Furthermore, prior to the shooting, DECEDENT was not suspected of committing any serious crime, Defendant COLLINS did not possess information that DECEDENT had committed any crime; Defendant COLLINS had no information that DECEDENT was armed with a weapon, and Defendant Collins had no information that DECEDENT had physically harmed or injured anyone.

38.     Defendant COLLINS shot DECEDENT despite lacking reasonable suspicion for stopping the DECEDENT's vehicle and DECEDENT not presenting any threat of death or serious bodily injury to himself or anyone else.   In the few seconds it took for DECEDENT to travel five hundred yards, Defendant COLLINS escalated a traffic stop into another unjustified killing of an unarmed black man.  According to Defendant COLLINS, neither his body camera nor his patrol vehicle's dashboard camera were operating during the DECEDENT's traffic stop and subsequent killing.

39.     Defendant COLLINS is responsible for pulling the trigger with every shot he fired and the shots fired were not in response to an immediate defense of his life.

40.      Defendant COLLINS had no information that DECEDENT had committed any felony or was armed with a weapon.

41.     Defendant COLLINS never called in the DECEDENT's traffic stop to his dispatchers; Defendant COLLINS never called for assistance or backup; Defendant COLLINS never activated his body camera or his patrol vehicle's dash-mounted camera; Defendant COLLINS never observed the DECEDENT violate any motor vehicle laws on Holden Beach Road prior to stopping him; Defendant COLLINS never confronted or gave any verbal commands to the DECEDENT without his service revolver being drawn and pointed at the DECEDENT, while yelling, "stop or I'll fucking shoot you."  Defendant COLLINS posed an immediate threat of death or serious physical injury to the DECEDENT, his passenger and public citizens exiting the Mini-Mart, as evinced by DECEDENT's death and the serious wounding of his passenger.

42.     Immediately after the shooting, Defendant COLLINS falsely claimed the DECEDENT tried to run him over and that he only shot the DECEDENT to keep from being run over by his vehicle.  DECEDENT never steered his truck in the direction of Defendant COLLINS, and in fact, went out of his way to avoid any contact with Defendant COLLINS on

the two (2) occasions Defendant COLLINS charged his vehicle.

43. After shooting the DECEDENT, the Min-Mart video footage shows Defendant COLLINS and another unidentified white male ("Mark Hewett") at the scene of the shooting deliberately and methodically searching for the shell casings ejected from Defendant COLLINS' gun.

44. Defendant COLLINS, along with DOES 1-10 of the SBI, conspired and agreed to lie about the events of January 1, 2019 in order to conceal their misconduct.

45. Defendant COLLINS' false statement that he shot the DECEDENT because he was trying to run him over was not supported by witness statements, the video recordings made by the Civietown high-definition surveillance cameras or the video recordings taken by patrons exiting the Mini-Mart.

46. The Mini-Mart's high definition video footage likely provided the highest quality pictorial evidence of the events surrounding the DECEDENT's death; however, after DOES 1-10 obtained a copy of the Mini-Mart video surveillance recording, DOES 1-10 falsely advised store owners that they could not release another copy without a court order. Furthermore, according to the store owners, DOES 1-10 threatened them with deportation if they released a copy of the video. DOES 1-10 intentionally mislead the store owners in order to conceal the shocking misconduct of Defendant COLLINS from members of the public and the media.

47. After DOES 1-10 threatened the Mini-Mart store owners with deportation, all efforts by the media, members of the public, and justice advocacy groups to obtain a copy of the Mini-Mart's video footage of Defendant COLLINS' killing of the DECEDENT were unsuccessful.

48. Shortly after DOES 1-10 prevented the Mini-Mart store owners from releasing a copy of "their" high-definition video footage of the DECEDENT'S death; DOES 1-10 began

confiscating the cell phones from shoppers that videotaped the DECEDENT'S death to reinforce the cover-up of their misconduct and to give them an opportunity to release an edited version of the Mini-Mart's video to the public to create a narrative more favorable to Defendant COLLINS.

49.     Following the SBI's calculated measures to prevent members of the media and the public from viewing the original video footage of the DECEDENT'S killing, relying only on the false statements made by Defendant COLLINS and DOES 1-10, news coverage immediately after the shooting wrongly stated the DECEDENT was shot while trying to run over Defendant COLLINS with his vehicle.

50.     DOES 1-10 from the SBI failed to confiscate all of the Mini-Mart shoppers' cell phones before video footage of the DECEDENT's death leaked onto social media platforms, like facebook and YouTube. The videos from the Mini-Mart shoppers' cell phones showed Defendant COLLINS standing on the driver's side of DECEDENT's truck and firing shots into the truck as it passed by. Additional video footage shows Defendant COLLINS and a civilian later identified as, Mark Hewett policing the crime scene for Defendant COLLINS' spent shell casings. The video also shows several law enforcement officers destroying the crime scene by driving their vehicles through it.

51.     Following the shooting, the SBI delayed interviewing Defendant COLLINS for over two (2) months. Thus, providing Defendant COLLINS and his co-conspirators with ample time to provide investigators,media outlets and the public with statements they knew were false.

52.     Relying on Defendant COLLINS' false statements, edited videotapes and the SBI agents' deliberate and methodical concealment of the facts surrounding Defendant COLLINS' killing of the DECEDENT, the North Carolina Attorney General, Josh Stein ("Mr. Stein"), found that Defendant COLLINS was justified in using deadly force against the DECEDENT.  Following Mr. Stein's decision, the media portrayed the DECEDENT, as a criminal killed by Defendant COLLINS, while attempting to run him over.

53.     Although Defendant COLLINS' patrol vehicle was equipped with a dash-mounted video camera ("dash cam"), representatives from Mr. Stein's office claimed that they "certified" that his dash cam was inoperative on January 1, 2019.  It is odd; Defendant COLLINS' dash-cam was inoperative on the busiest DWI holiday of the year.  On information and belief, it is the policy of the North Carolina State Highway Patrol ("NCSHP") that all patrolman "test and certify" that their patrol vehicle's dash-mounted cameras are properly operating prior to and following each shift on patrol.

54.     During a meeting held on April 12, 2019 between TOWANDA REED and representatives of Mr. Stein's office, said representatives could not provide a legal justification for Defendant COLLINS' detainment of the DECEDENT, nor provide a legal justification for Defendant COLLINS' escalation of events to an attempted arrest of the DECEDENT.

55.     Following the events referenced hereinabove, neither the DECEDENT nor his passenger were ever charged with a crime.

56.     Plaintiff TOWANDA REED was dependent on DECEDENT, including financially dependent.

## V.     CLAIMS FOR RELIEF

### COUNT I

**42 U.S.C. § 1983 Violations**
**Unreasonable Search and Seizure**

Detention and Arrest

57.     The Plaintiffs incorporate by reference hereto paragraphs one (1) through fifty-six (56) of this Complaint as though fully set forth below in this Count I.

58.     Defendant COLLINS caused DECEDENT to be detained and he attempted to arrest DECEDENT in violation of his right to be secure in his person against unreasonable

searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.  Further, Defendant COLLINS, under color of law, deprived the DECEDENT of his rights to due process of law and equal protection under the law.

59.      As the result of the conduct of Defendant COLLINS, he is liable for DECEDENT's injuries and subsequent death because he alone directly participated in violating the DECEDENT's rights.

60.      Defendant COLLINS detained the DECEDENT without reasonable suspicion and then attempted to arrest the DECEDENT without probable cause.

61.      The DECEDENT's right to not be subjected to the misconduct of Defendant COLLINS was clearly established at the time of the misconduct.

62.      Defendant COLLINS could reasonably foresee that his misconduct could result in the serious bodily injury or death of the DECEDENT.

63.      As a direct result of Defendant COLLINS discharging his firearm into the occupied passenger compartment of the DECEDENT's vehicle at least two times, striking him twice, including shots to his left side and shoulder, the DECEDENT suffered serious physical injuries that resulted in his death.

64.      The conduct of Defendant COLLINS was willful, wanton, malicious, and done in a manner that demonstrated his reckless disregard for the rights and life of the DECEDENT and therefore warrants the imposition of compensatory and punitive damages.

65.      Accordingly, Defendant COLLINS is liable to the Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. § 1983.

66.      The Plaintiffs also seek attorney fees under this claim.

## COUNT II

### 42 U.S.C. § 1983 Violations
### Unreasonable Search and Seizure

<u>Excessive Force</u>

67.    The Plaintiffs incorporate by reference hereto paragraphs one (1) through sixty-six (66) of this Complaint as though fully set forth below in this Count II.

68.    Defendant COLLINS had no legal justification for shooting the DECEDENT.

69.    The DECEDENT did not pose an immediate threat to Defendant COLLINS.  An objectively reasonable officer in the Defendant's circumstances would not have concluded that a threat existed justifying the use of deadly force against the DECEDENT.

70.    As a result, DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life and eventually suffered a loss of life and of earning capacity. The Plaintiffs have also been deprived of the love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be deprived for the remainder of their natural lives.  The Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

71.    As the result of the conduct of Defendant COLLINS, he is liable for DECEDENT'S injuries and subsequent death because he alone applied the excessive force that directly caused the DECEDENT's demise.

72.    Defendant COLLINS' use of deadly force was excessive because this was not an immediate defense of life scenario.  Defendant COLLINS, while standing beside the DECEDENT's truck and out of its path, fired at least two gunshots at DECEDNT after his truck had already passed.  Any threat posed by the DECEDENT ended when he drove his vehicle in a trajectory away from Defendant COLLINS.  After the DECEDENT had driven past the Defendant and in a trajectory away from him, an objectively reasonable officer in the

Defendant's circumstances would have concluded that no threat existed justifying Defendant COLLINS' use of deadly force.

73.     The Defendant's use of deadly force was excessive and unreasonable under the circumstances because the DECEDENT never verbally threatened Defendant COLLINS nor made any effort to harm or injure Defendant COLLINS, personally or with his vehicle, prior to being fatally shot by him.  Furthermore, prior to the shooting, DECEDENT was not suspected of committing any serious crime, Defendant COLLINS did not possess information that DECEDENT had committed any crime; Defendant COLLINS had no information that DECEDENT was armed with a weapon, and Defendant COLLINS had no information that DECEDENT had physically harmed or injured anyone. Yet, Defendant COLLINS discharged his firearm into the occupied passenger compartment of the DECEDENT's vehicle at least two times, striking him twice.  An objectively reasonable officer in Defendant COLLINS' circumstances would not have concluded that a threat existed justifying the Defendant's use of deadly force.

74.     Defendant COLLINS' conduct was objectively unreasonable under the facts and circumstances then existing.  DECEDENT did not consent to any of the Defendant's conduct as described herein.

75.     The DECEDENT's right not to be subjected to such conduct was clearly established at the time of the misconduct.

76.     The conduct of Defendant COLLINS was willful, wanton, malicious, and done in a manner that demonstrated his reckless disregard for the rights and life of the DECEDENT and therefore warrants the imposition of compensatory and punitive damages.

77.     As a proximate result of Defendant COLLINS' wrongful conduct, DECEDENT was shot at least two (2) times, suffered serious physical and emotional injury, and ultimately

died. Accordingly, Defendant COLLINS is liable to the Plaintiffs for both survival and wrongful death damages for the violation of the DECEDENT's rights.

78. The Plaintiffs also seek attorney fees under this claim.

## COUNT III

### 42 U.S.C. § 1983 Violations
### Substantive Due Process

79. The Plaintiffs incorporate by reference hereto paragraphs one (1) through seventy-eight (78) of this Complaint as though fully set forth below in this Count III.

80. K.W. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprived her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her father, DECEDENT.

81. B.W. Jr. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprived him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with his father, DECEDENT.

82. A.R. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprived him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with his brother, DECEDENT.

83. TOWANDA REED had a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprived her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her son, DECEDENT.

84. As the result of Defendant COLLINS' use of excessive force, DECEDENT died. Plaintiffs A.R., K.W., B.W. Jr. and TOWANDA REED were thereby deprived of their constitutional right of familial relationship with DECEDENT.

85. Defendant COLLINS, acting under color of state law, thus violated the Fourteenth Amendment rights of A.R., K.W., B.W. Jr. and TOWANDA REED to be free from unwarranted interference with their familial relationship with DECEDENT.

86. The aforementioned actions by Defendant COLLINS, along with other undiscovered conduct, shock the conscience, in that he acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs A.R., K.W., B.W. Jr. and TOWANDA REED with a purpose to harm unrelated to any legitimate law enforcement objective.

87. Defendant COLLINS, acting under color of state law, thus violated the Fourteenth Amendment rights of the DECEDENT and Plaintiffs.

88. As a direct and proximate cause of the acts by Defendant COLLINS, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

89. As a direct and proximate result of Defendant COLLINS' misconduct, he is liable for DECEDENT's injuries and subsequent death; further, he alone participated in the denial of due process.

90. The conduct of Defendant COLLINS was willful, wanton, malicious, and done in a manner that demonstrated his reckless disregard for the rights and life of the DECEDENT and Plaintiffs, and therefore, warrants the imposition of compensatory and punitive damages.

91.     Plaintiffs bring this claim individually and seek wrongful death damages for the violation of Plaintiffs' rights.

92.     The Plaintiffs also seek attorney fees under this claim.

## COUNT IV

## North Carolina Law

### False Arrest/False Imprisonment
(Wrongful Death)

93.     The Plaintiffs incorporate by reference hereto paragraphs one (1) through ninety-two (92) of this Complaint as though fully set forth below in this Count IV.

94.     Defendant COLLINS, while working as a patrolman for the NCSHP, and while working within the course and scope of his duties, intentionally deprived DECEDENT of his freedom of movement by use of force, threats of force and unreasonable duress when Defendant COLLINS shot DECEDENT multiple times and killed him. Defendant COLLINS intentionally shot at the DECEDENT in order to detain him. Defendant COLLINS also detained the DECEDENT without reasonable suspicion. There was an attempt by Defendant COLLINS to arrest the DECEDENT without probable cause.

95.     DECEDENT did not knowingly or voluntarily consent to his detention or attempted arrest. Upon information and belief, DECEDENT did not feel free to leave as Defendant COLLINS yelled "Stop or I'll fucking shoot you," or after being shot at least twice by Defendant COLLINS while driving past him. By shooting and killing the DECEDENT, Defendant COLLINS deprived DECEDENT, who was unarmed, of his liberty without justification. Furthermore, Defendant COLLINS did not have probable cause to believe that DECEDENT, specifically, had committed any crime.

96.     Defendant COLLINS by firing multiple gunshots at DECEDENT was the direct cause of the harm that resulted in DECEDENT's death.

97. Defendant COLLINS' conduct was malicious, wanton, oppressive, and undertaken with a deliberate disregard for the rights of DECEDENT, entitling Plaintiffs to an award o compensatory and punitive damages.

98. Plaintiffs are seeking both survival and wrongful death damages under this claim.

## COUNT V

## North Carolina Law

Battery
(Wrongful Death)

99. The Plaintiffs incorporate by reference hereto paragraphs one (1) through ninety-eight (98) of this Complaint as though fully set forth below in this Count V.

100. Defendant COLLINS, while working as a patrolman for the NCSHP, and while working within the course and scope of his duties, intentionally shot DECEDENT multiple times, including shots to his leg and chest, after the DECEDENT had already driven past the Defendant. Furthermore, DECEDENT was not suspected of committing any serious crime, Defendant COLLINS did not possess information that DECEDENT had committed any crime; DECEDENT was unarmed, and Defendant COLLINS had no information that DECEDENT had physically harmed or injured anyone. The use of deadly force was also unreasonable because there were clearly less lethal options available.

101. Defendant Collins shot DECEDENT with actual malice.

102. As a proximate result of Defendant COLLINS' wrongful conduct, DECEDENT suffered severe mental and physical pain and suffering, loss of enjoyment of life, loss of earning capacity, and ultimately death from his injuries.

103. As a direct and proximate result of Defendant COLLINS' conduct as alleged hereinabove, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love,

companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

104. Defendant COLLINS' actions were done maliciously, willfully, or wantonly, or in a manner that demonstrated a reckless disregard for the rights of the Plaintiffs and the DECEDENT, entitling Plaintiffs, individually and as successors-in-interest to DECEDENT, to an award of compensatory and punitive damages.

105. Plaintiffs bring this claim both individually and as successors-in-interest to DECEDENT, and seek recovery of both survival and wrongful death damages.

## COUNT VI

## North Carolina Law

Negligence
(Wrongful Death)

106. The Plaintiffs incorporate by reference hereto paragraphs one (1) through one-hundred and five (105) of this Complaint as though fully set forth below in this Count VI.

107. Defendant COLLINS negligently, carelessly, recklessly and unlawfully performed or failed to perform mandatory duties so as to cause the death of the DECEDENT. These duties include but are not limited to:

(a)     Failing to operate his body camera and his patrol vehicle's dash-mounted camera;

(b)     Failing to properly and adequately assess the need to detain, arrest, and use force, including deadly force against DECEDENT;

(c)     Failing to have reasonable suspicion before stopping the DECEDENT;

(d)     Failing to have probable cause before attempting to arrest the DECEDENT;

(e)     Firing multiple gunshots through the tinted driver's side window of DECEDENT's truck into the occupied passenger compartment of same as he was driving past the Defendant; and

(f)     Leaving the safety and protection of his patrol vehicle to repeatedly place himself in the immediate proximity of DECEDENT's truck as he was attempting to exit the Mini-Mart's parking lot.

108.    As a direct and proximate result of Defendant COLLINS' conduct as alleged hereinabove, and other undisclosed negligent conduct, DECEDENT endured great pain and suffering from his gunshot wounds, lost earning capacity, and ultimately died from his injuries. Also as direct and proximate result of Defendant's conduct as alleged hereinabove, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

109.    Plaintiffs bring this claim both individually and as successors-in-interest to DECEDENT, and seek recovery of both survival and wrongful death damages.

**COUNT VII**

**North Carolina Law**

Ethnic Intimidation
Violation of N.C.G.S. § 14-401.14

110.    The Plaintiffs incorporate by reference hereto paragraphs one (1) through one-hundred and nine (109) of this Complaint as though fully set forth below in this Count VII.

111.    N.C.G.S. § 14-401.14 prohibits assaulting another person, damaging or defacing the property of another person, or threatening to do any such act because of the person's race, color, religion, nationality, or country of origin.

112.    Conduct that violates the Fourth Amendment violates N.C.G.S. § 14-401.14.

113.    Defendant COLLINS' use of deadly force was excessive and unreasonable because the DECEDENT was unarmed, was not a fleeing felon, had not committed any crime, had not seriously injured another, and tried to surrender before driving past the Defendant when he was fatally shot.  Further, the Defendant did not have a reasonable suspicion of criminal conduct before stopping the DECEDENT's vehicle, nor did the Defendant have probable cause to attempt the arrest of the DECEDENT.  Defendant COLLINS' actions thus deprived the DECEDENT of his right to be free from unreasonable searches and seizures under the Fourth Amendment and as applied to state actors by the Fourteenth Amendment.

114.    Defendant COLLINS intentionally violated DECEDENT's rights under § 1983 by detaining the DECEDENT without reasonable suspicion, by attempting to arrest DECEDENT without probable cause, and by using excessive deadly force against DECEDENT, including but not limited to, firing several gunshots into the occupied passenger compartment of the unarmed DECEDENT's truck as it passed by, and thereby, presented no threat to the Defendant.  Further, these acts demonstrated the Defendant's reckless disregard for the DECEDENT's constitutional rights.

115.    During a meeting between TOWANDA REED and Mr. Stein's representatives held on April 12, 2019, said representatives could not offer a legal justification for Defendant COLLINS' detainment of the DECEDENT, nor provide a legal justification for Defendant COLLINS' attempted arrest of the DECEDENT. Most importantly, the Attorney General's office could not cite a charge against Mr. Webster that involved assaultive conduct. The only crime the Attorney General's office named as a potential charge against the DECEDENT was: Fleeing to Allude Arrest.

116.    The DECEDENT never posed an immediate threat of death or serious bodily injury, nor threatened or made any attempt to injure the Defendant or anyone else prior to being shot. There is direct and circumstantial evidence of Defendant COLLINS' racial animus towards

black people. Defendant COLLINS intentionally violated DECEDENT's rights under § 1983 by unlawfully detaining him, by attempting to arrest him and by fatally shooting the DECEDENT multiple times, including shots to his left side and shoulder after he had already driven past the Defendant, and was travelling in a direction away from the Defendant.

117.    Defendant COLLINS, while working as a patrolman for the NCSHP, and acting within the course and scope of his duties, interfered with or attempted to interfere with the rights of DECEDENT to be free from unreasonable searches and seizures, to equal protection of the laws, to access to the courts, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats of violence, coercion, or intimidation. DECEDENT, an African-American male, was also racially profiled by Defendant COLLINS.

118.    DECEDENT was made to suffer extreme mental and physical pain and suffering, loss of enjoyment of life and eventually suffered a loss of life and of earning capacity.  The Plaintiffs have also been deprived of the love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be deprived for the remainder of their natural lives.  The Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

119.    Defendant COLLINS by firing multiple gunshots into the DECEDENT was the direct cause of the harms, losses, injuries, and damages of DECEDENT and Plaintiffs.

120.    Defendant COLLINS' conduct was malicious, wanton, oppressive, and undertaken with a deliberate disregard for the rights of DECEDENT, entitling Plaintiffs to an award of compensatory and punitive damages.

121.    Plaintiffs bring this claim both individually and as successors-in-interest to DECEDENT, and seek recovery of both survival and wrongful death damages.

122.    The Plaintiffs also seek attorney fees under this claim.

## COUNT VIII

## North Carolina Law

<u>Negligent Infliction of Emotional Distress</u>

123.     The Plaintiffs incorporate by reference hereto paragraphs one (1) through one-hundred and twenty-two (122) of this Complaint as though fully set forth below in this Count VIII.

124.     Defendant COLLINS negligently caused physical injury and death to DECEDENT when he discharged his firearm at DECEDENT, striking him multiple times and eventually killing him.  Defendant's negligent conduct includes pre-shooting negligent conduct, actions, inactions and tactics.

125.     TOWANDA REED was present at her residence when the DECEDENT entered her home after being fatally shot by the Defendant.  TOWANDA REED, assisted by her husband, placed the DECEDENT into the family car and transported him to the emergency room.  TOWANDA REED, covered in her son's blood, was aware DECEDENT was dying.

126.     After DECEDENT was fatally shot by Defendant COLLINS and experiencing his death while he laid in her arms, TOWANDA REED suffered serious emotional distress, including but not limited to, suffering severe anguish, fright, nervousness, sleeplessness, grief, anxiety, worry, shock, devastation, and despair.

127.     On information and belief, any ordinary reasonable person would suffer from post traumatic stress disorder from seeing their son fatally shot multiple times, bleeding profusely from his wounds, and ultimately dying in their arms before they could reach the hospital..

128.     TOWANDA REED brings this claim individually and seeks damages under this claim as an individual.

## COUNT IX

### North Carolina Law

<u>Civil Conspiracy</u>

129.     The Plaintiffs incorporate by reference hereto paragraphs one (1) through one-hundred and twenty-eight (128) of this Complaint as though fully set forth below in this Count IX.

130.     This claim is brought against Defendant COLLINS and DOES 1-10.

131.     After fatally shooting DECEDENT, Defendants conferred with DOES 1-10 and agreed to engage in a conspiracy to cover up their misconduct.

132.     Defendants developed and agreed to their conspiracy for the purpose of protecting themselves and injuring the DECEDENT.

133.     Defendants' plan included each participant making false, defamatory statements about the DECEDENT, and DECEDENT's actions on January 1, 2019.  Defendants coordinated their statements in order to conceal the misdeeds of Defendant COLLINS and cover-up their efforts to intimidate witnesses, conceal evidence and obstruct the investigation into DECEDENT's death.

134.     Defendants' plan included intimidating witnesses, concealing evidence, editing video footage of the shooting and intentionally making false statements to members of the public and the press about what happened on January 1, 2019.

135.     Defendants executed their conspiracy.

136.     As a direct and proximate result of the Defendants' conspiracy, Plaintiffs suffered general damages including emotional distress, humiliation, loss of reputation, as well as special damages including:

(a)      Loss of the love, companionship, comfort, support, society, care, and sustenance

of DECEDENT;

(b)      Experiencing extreme and severe mental anguish and pain and have been injured in mind and body;

(c)      Stress and anxiety caused by fearing governmental retribution;

(d)      Stress and anxiety caused by fearing for the safety of loved ones;

(e)      Emotional damages caused by the loss of confidence in state and local law enforcement and the criminal justice system; and

(f)      Emotional damages caused by the inability to feel secure in their person, property, or community.

137.    Defendants' actions were done maliciously, willfully, or wantonly, or in a manner

that demonstrates a reckless disregard for the rights of the Plaintiffs and the DECEDENT.

## VI.   <u>JURY DEMAND</u>

**THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

## VII.   <u>PRAYER FOR RELIEF</u>

Based on the foregoing, Plaintiffs pray for the following relief:

(1)      For compensatory damages in excess of $20,000,000.00, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

(2)      For medical, funeral and burial expenses, and loss of financial support;

(3)      For punitive damages against the individual Defendants in an amount to be proven at trial;

(4)      For interest;

(5)      For reasonable costs of this lawsuit and attorneys' fees; and

(6)      For such other further relief as the Court deems just, proper, and appropriate.

RESPECTFULLY SUBMITTED this 15th day of December2020.

/s/Ira Braswell IV
Ira Braswell IV
*Attorney for Plaintiffs*
BRASWELL LAW, PLLC
P.O. Box 703
Louisburg, NC 27549
Telephone:     (252) 458-2203
Facsimile:      (980) 225-0132
NC State Bar No. 41799

# VERIFICATION

NORTH CAROLINA

BRUNSWICK COUNTY

**MARY TOWANDA WEBSTER-REED**, being first duly sworn deposes and says:

I am a Plaintiff and the Personal Representative of the Estate of BRANDON LOVELL WEBSTER in this action; that I have read the foregoing Complaint and know the contents thereof; and that said contents are true of my own knowledge except for those matters and things stated therein upon information and belief, and as to such matters and things, I believe said contents to be true.

**MARY TOWANDA WEBSTER-REED**

Sworn to and subscribed before me this 7th day of November 2020.

**NOTARY PUBLIC**

My commission expires: 11/14/22

(seal)