IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:20-cv-248-FL

| | |
|---|---|
| MARY TOWANDA WEBSTER-REED, individually and as representative of the Estate of Brandon Lovell Webster; ALDRIDGE REED, as representative of the Estate of Brandon Lovell Webster; K.W., a minor, by and through her Guardian Ad Litem, as heir to Brandon Lovell Webster; and B.W. JR., by and through his Guardian Ad Litem, as heir to Brandon Lovell Webster,<br><br>*Plaintiffs*,<br>v.<br><br>SCOTT ANTHONY COLLINS, *in his individual capacity*,<br><br>*Defendant*. | **FIRST AMENDED COMPLAINT** |

Plaintiffs Mary Towanda Webster-Reed, individually and as the personal representative of the Estate of Brandon Lovell Webster; Aldridge Reed, as co-representative of the Estate of Brandon Lovell Webster; K.W., a minor, by and through her Guardian Ad Litem, Ryan Smithwick; and B.W. Jr., a minor, by and through his Guardian Ad Litem, Ryan Smithwick, allege the following:

**INTRODUCTION**

1. In this civil rights action, Plaintiffs seek damages under 42 U.S.C. § 1983 for violations of the United States Constitution, along with damages for violations of the North Carolina common law, in connection with the killing of Brandon Lovell Webster.

2. Plaintiffs further seek the payment of attorneys' fees and the costs of maintaining this action as provided by statute, as well as other and further relief as is deemed

- 1 -

necessary and proper by the Court.

## JURISDICTION AND VENUE

3. This civil action is brought for the redress of deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. This case also arises under the common law of the State of North Carolina and N.C. Gen. Stat. § 28A-18-2.

4. This Court has jurisdiction over Plaintiffs' § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all material events giving rise to this action occurred in Brunswick County, North Carolina, which is within the Southern Division of the United States District Court for the Eastern District of North Carolina.

## PARTIES

5. At all relevant times, Brandon Lovell Webster was an individual residing in the Town of Shallotte in Brunswick County, North Carolina. Webster is Black.

6. Plaintiff Mary Towanda Webster-Reed is an individual residing in Brunswick County, North Carolina and was at all relevant times the natural mother of Webster. Webster-Reed sues both in her individual capacity as the mother of Webster, and in a representative capacity as the personal representative of the Estate of Brandon Lovell Webster. In her representative capacity, Webster-Reed seeks both survival and wrongful death damages under federal and state law.

7. Plaintiff Aldridge Reed is an individual residing in Brunswick County, North

- 2 -

Case 7:20-cv-00248-FL   Document 36   Filed 09/23/21   Page 2 of 17

Carolina. Reed sues in his capacity as co-representative of the Estate of Brandon Lovell Webster. In his representative capacity, Reed seeks both survival and wrongful death damages under federal and state law.

8. Plaintiff B.W. Jr. is a minor individual residing in Brunswick County, North Carolina, and is the natural born son to Webster. B.W. Jr. sues by and through Guardian Ad Litem Ryan Smithwick. B.W. Jr. sues both in his capacity as the son of Webster and in his representative capacity as an heir and successor-in-interest to Webster. B.W. Jr. seeks both survival and wrongful death damages under federal and state law.

9. Plaintiff K.W. is a minor individual residing in Brunswick County, North Carolina, and is the natural born daughter to Webster. K.W. sues by and through Guardian Ad Litem Ryan Smithwick. K.W. sues both in her capacity as the daughter of Webster and in her representative capacity as an heir and successor-in-interest to Webster. K.W. seeks both survival and wrongful death damages under federal and state law.

10. Defendant Scott Anthony Collins is a citizen and resident of Columbus County, North Carolina. At all relevant times, Defendant Collins was a duly sworn patrolman with the North Carolina State Highway Patrol ("NCSHP") and his actions were taken under color of state law and were within the scope and course of his duties as a patrolman. Defendant Collins is sued in his individual capacity. Collins is white.

**FACTS**

11. On January 1, 2019, Webster was at his family's home at 2353 Shell Point Road, in the Civietown neighborhood of Shallotte in Brunswick County, North Carolina.

12. At approximately 9:00 p.m., Webster, accompanied by his longtime girlfriend, Whitney McKeithan, drove to the Civietown Mini-Mart (the "Mini-Mart"). The Mini-Mart was

located approximately one-quarter mile from his family's home. Webster was going to buy snacks for a few friends and family members gathered at his family's home watching the New Year's Day college football bowl games.

13. For Webster to travel to the Mini-Mart, he had to make a left turn onto Holden Beach Road. After turning onto Holden Beach Road, he had to travel approximately five hundred yards to the front entrance of the Mini-Mart.

14. As Webster was driving to the Mini-Mart, Defendant Collins was in his patrol car near the corner of Holden Beach Road and Shell Point Road.

15. In the seconds it took for Webster to travel five hundred yards to the front entrance of the Mini-Mart, Collins activated his patrol car's blue lights and followed Webster into the Mini-Mart's parking lot.

16. Webster parked his truck in one of the parking spaces directly in front of the Mini-Mart.

17. Collins was not pursuing Webster for any violation of North Carolina law. Before attempting to stop Webster, Collins did not run Webster's tags. Webster had not been speeding or driving recklessly. Collins lacked any objective basis to believe that Webster had committed or was about to commit a traffic or any other criminal offense.

18. At the time of the traffic stop, Webster posed no immediate threat of death or serious physical injury to Collins or any other person.

19. After Webster pulled his truck into a parking space at the Mini-Mart, Collins drove his patrol car behind the car parked in the space next to Webster's truck.

20. Webster attempted to leave the parking lot by backing out and pulling around Collins's patrol car. As Webster was doing that, Collins got out of his patrol car with his gun

- 4 -

drawn and pointed in Webster's direction. As Webster attempted to leave the parking lot, Collins continued to point his gun at him and yell at him.

21. When Webster had backed his truck up far enough into the parking lot to drive out without coming into contact with Collins or his patrol car, Collins came out from behind his patrol car and then walked in front of Webster's truck. He was still pointing his gun at Webster and shouting commands. Webster stopped the truck to avoid hitting Collins.

22. As Collins continued to shout commands and point his gun at the front of the truck, McKeithan attempted to get out of the truck, and Webster held up his hands; however, Collins continued to point his gun at them and yelled at McKeithan to get back in the truck. Webster put his hands back down.

23. As Collins continued to move down the driver's side of the truck toward the driver's door, Webster attempted to drive by Collins, out of the parking lot. Collins immediately took several steps backward, toward the front of the truck, and yelled at a bystander to call 911. He then yelled at Webster, "Stop or I'll shoot you, god damn it!"

24. As Collins remained on the driver's side of the truck, Webster drove by Collins toward the parking lot's exit.

25. While Webster was driving by Collins, Collins shot Webster twice through the driver's side of the truck. Collins shot Webster in his left side and shoulder. Webster later died from these injuries.

26. When Collins fired into the occupied passenger compartment of Webster's vehicle, it was also still occupied by McKeithan because Collins had ordered her back into the truck at gunpoint. McKeithan was seriously injured by shards of glass from the driver's side window shot out by Defendant Collins.

27. Collins was standing outside of Webster's path of travel, removed from any threat of harm, when he twice shot Webster.

28. After Collins shot him, Webster drove the quarter-mile back to his family's home, where his parents placed him into the back seat of their car and transported him to Novant Regional Hospital. Webster lost consciousness in his mother's arms before arriving at the emergency room, and he never regained it.

29. Collins stopped Webster, threatened to shoot Webster, and shot Webster, because he was a young Black man. Collins would not have stopped, threatened, or shot Webster if he was white.

30. After emergency room staff took Webster from his parents, Webster's parents, while still covered in their son's blood, were detained at gunpoint, handcuffed behind their backs, and taken into custody by deputies from the Brunswick County Sheriff's Department ("BCSD"). Webster's parents were never charged with a crime.

31. The SBI was called to the scene to investigate the shooting. SBI agents interviewed McKeithan and the bystander witness within hours of the shooting.

32. Collins was not interviewed on the night of the shooting. Instead, while he was still at the crime scene, Collins called his lawyer, who was then admitted into the crime scene. Collins and his lawyer were then permitted to walk around the crime scene together. Collins and his lawyer did not meet with SBI agents until two weeks later.

33. Immediately after the shooting, and in multiple statements to different law enforcement agencies investigating Collins's killing of Brandon Webster, Defendant Collins falsely claimed Webster tried to run him over, falsely claimed that he was directly in front of Webster's truck when he fired his weapon, and falsely stated that he only shot Webster to keep

from being run over by his truck.

## CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983 Violations
### Unreasonable Detentions and Seizures

34. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Count I.

35. This claim is brought by Webster-Reed and Reed in their capacity as representatives of the estate of Brandon Lovell Webster, and by A.R. and B.W. in their capacity as successors in interest and heirs of the estate of Brandon Lovell Webster.

36. Defendant Collins seized and detained Webster without legal justification when he stopped Webster's vehicle and when he shot Webster. Collins's conduct violated Webster's right to be secure in his person against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution as applied to state actors by the Fourteenth Amendment.

37. Defendant's conduct was objectively unreasonable under the facts and circumstances then existing.

38. Webster's right to not be subjected to the misconduct of Defendant Collins was clearly established at the time of the misconduct.

39. Defendant Collins could reasonably foresee that his misconduct could result in the serious bodily injury or death of Webster.

40. As a direct and proximate result of Defendant Collins's unlawful seizures, Webster suffered damages including serious physical injuries, pain and suffering, and death. As a direct and proximate result of Defendant Collins's unlawful seizures, Webster's family

members and heirs have suffered damages including the deprivation of the love, companionship, comfort, support, society, care, and sustenance of Webster.

41. As a direct and proximate result of Defendant Collins's wrongful conduct, Webster suffered personal injuries that resulted in his death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Webster-Reed and Reed, as Administrators of the Estate of Brandon Lovell Webster, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under North Carolina law, are entitled to recover from Defendant Collins compensatory damages for the injuries and subsequent wrongful death of Webster proximately caused by Defendant Collins, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

42. The conduct of Defendant Collins was willful, wanton, malicious, and done in a manner that demonstrated his reckless disregard for the rights and life of Webster and therefore warrants the imposition of punitive damages.

43. Accordingly, Defendant Collins is liable to the Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages, under 42 U.S.C. § 1983.

## COUNT II
## 42 U.S.C. § 1983 Violations
## Excessive Force

44. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Count II.

45. This claim is brought by Webster-Reed and Reed in their capacity as representatives of the estate of Brandon Lovell Webster, and by A.R. and B.W. in their capacity as successors in interest and heirs of the estate of Brandon Lovell Webster.

46. Defendant Collins had no legal justification for shooting Webster.

47. Webster did not pose an immediate threat to Defendant Collins. An objectively reasonable officer in the Defendant's circumstances would not have concluded that a threat existed justifying the use of deadly force against Webster.

48. Defendant Collins deprived Webster of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Webster under the Fourth Amendment to the United States Constitution as applied to state actors by the Fourteenth Amendment.

49. Collins's use of deadly force was objectively excessive and unreasonable under the circumstances.

50. Webster's right not to be subjected to such conduct was clearly established at the time of the misconduct.

51. As a direct and proximate result of Defendant Collins's unlawful use of force, Webster suffered damages including serious physical injuries, pain and suffering, and death. Webster's family members and heirs have suffered damages including the deprivation of the love, companionship, comfort, support, society, care, and sustenance of Webster.

52. As a direct and proximate result of Defendant Collins's wrongful conduct, Webster suffered personal injuries that resulted in his death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Webster-Reed and Reed, as Administrators of the Estate of Brandon Lovell Webster, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under the North Carolina law, is entitled to recover from Defendant Collins compensatory damages for the injuries and subsequent wrongful death of Webster proximately caused by Defendant Collins, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

53. The conduct of Defendant Collins was willful, wanton, malicious, and done in a

manner that demonstrated his reckless disregard for the rights and life of Webster and therefore warrants the imposition of punitive damages.

54. Accordingly, Defendant Collins is liable to the Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages.

## COUNT III
## 42 U.S.C. § 1983
## Equal Protection

55. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Court III.

56. This claim is brought by Webster-Reed and Reed in their capacity as representatives of the estate of Brandon Lovell Webster, and by A.R. and B.W. in their capacity as successors in interest and heirs of the estate of Brandon Lovell Webster.

57. Defendant Collins targeted Webster for supposed misconduct because of Webster's race. If Webster were not Black, he would not have been stopped, threatened, or shot by Defendant Collins.

58. Defendant Collins's conduct was objectively unreasonable under the facts and circumstances then existing.

59. Defendant Collins's conduct deprived Webster of his rights under the Fourteenth Amendment to the United States Constitution.

60. Webster's right not to be subjected to such conduct was clearly established at the time of the misconduct.

61. As a proximate result of Defendant's wrongful conduct, Webster suffered damages including physical injuries, emotional distress, humiliation, loss of reputation, and death. As a proximate result of Defendant's wrongful conduct, Webster's family members and

- 10 -

Case 7:20-cv-00248-FL   Document 36   Filed 09/23/21   Page 10 of 17

heirs have suffered damages including the deprivation of the love, companionship, comfort, support, society, care, and sustenance of Webster.

62. As a direct and proximate result of Defendant Collins's wrongful conduct, Webster suffered personal injuries that resulted in his death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Webster-Reed and Reed, as Administrators of the Estate of Brandon Lovell Webster, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under the North Carolina law, are entitled to recover from Defendant Collins compensatory damages for the injuries and subsequent wrongful death of Webster proximately caused by Defendant Collins, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

63. The conduct of Defendant Collins was willful, wanton, malicious, and done in a manner that demonstrated his reckless disregard for the rights and life of Webster and therefore warrants the imposition of punitive damages.

64. Defendant Collins is liable to Plaintiffs for compensatory and punitive damages, including both survival damages and wrongful death damages.

## COUNT IV
### North Carolina Law
### Wrongful Death Arising from False Arrest/False Imprisonment

65. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Count IV.

66. This claim is brought by Webster-Reed and Reed in their capacity as representatives of the estate of Brandon Lovell Webster.

67. Defendant intentionally restrained Webster by force and by implied threat of force.

68. The restraint was against Webster's will.

69. Defendant lacked any lawful justification for restraining Webster.

70. Defendant's wrongful conduct was malicious, corrupt, and/or beyond the scope of his official duties.

71. As a proximate result of Defendant's wrongful conduct, Webster suffered damages including physical injuries, emotional distress, humiliation, loss of reputation, and death. As a proximate result of Defendant's wrongful conduct, Webster's family members and heirs have suffered damages including the deprivation of the love, companionship, comfort, support, society, care, and sustenance of Webster.

72. As a direct and proximate result of Defendant Collins's wrongful conduct, Webster suffered personal injuries that resulted in his death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Webster-Reed and Reed, as Administrators of the Estate of Brandon Lovell Webster, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under North Carolina law, are entitled to recover from Defendant Collins compensatory damages for the injuries and subsequent wrongful death of Webster proximately caused by Defendant Collins, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

73. The conduct of Defendant Collins was willful, wanton, malicious, and done in a manner that demonstrated his reckless disregard for the rights and life of Webster and therefore warrants the imposition of punitive damages.

74. Accordingly, Defendant Collins is liable to Plaintiffs for compensatory and punitive damages, including wrongful death damages.

### COUNT V
### North Carolina Law
### Wrongful Death Arising from Battery

75. Plaintiffs incorporate by reference hereto the foregoing paragraphs of this

Complaint as though fully set forth below in this Count V.

76. This claim is brought by Webster-Reed and Reed in their capacity as representatives of the estate of Brandon Lovell Webster

77. Defendant Collins, while working as a patrolman for the NCSHP, and while working within the course and scope of his duties, intentionally shot Webster multiple times.

78. Defendant Collins lacked any lawful justification for shooting Webster. Defendant's use of force was not necessary in the proper discharge of his duties.

79. As a proximate result of Defendant's wrongful conduct, Webster has suffered damages including physical injuries, emotional distress, humiliation, loss of reputation, and death. As a proximate result of Defendant's wrongful conduct, Webster's family members and heirs have suffered damages including the deprivation of the love, companionship, comfort, support, society, care, and sustenance of Webster.

80. As a direct and proximate result of Defendant Collins's wrongful conduct, Webster suffered personal injuries that resulted in his death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Webster-Reed and Reed, as Administrators of the Estate of Brandon Lovell Webster, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under North Carolina law, are entitled to recover from Defendant Collins compensatory damages for the injuries and subsequent wrongful death of Webster proximately caused by Defendant Collins, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

81. The conduct of Defendant Collins was willful, wanton, malicious, and done in a manner that demonstrated his reckless disregard for the rights and life of Webster and therefore warrants the imposition of punitive damages.

82. Defendant Collins is liable to Plaintiffs for compensatory and punitive damages,

- 13 -

Case 7:20-cv-00248-FL   Document 36   Filed 09/23/21   Page 13 of 17

including wrongful death damages.

## COUNT VI
## North Carolina Law
### Wrongful Death Arising from Negligence

83. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Count VI.

84. This claim is brought by Webster-Reed and Reed in their capacity as representatives of the estate of Brandon Lovell Webster

85. Defendant Collins negligently, carelessly, recklessly and unlawfully performed or failed to perform mandatory duties so as to cause the death of Webster. These duties include but are not limited to:

　(a)　Failing to operate his body camera and his patrol car's dash-mounted camera;

　(b)　Failing to properly and adequately assess the need to detain, arrest, and use force, including deadly force against Webster;

　(c)　Failing to have reasonable suspicion before stopping Webster;

　(d)　Failing to have probable cause before attempting to arrest Webster;

　(e)　Firing multiple gunshots through the tinted driver's side window of Webster's truck into the occupied passenger compartment of the truck as Webster was driving past the Defendant;

　(f)　Leaving the safety and protection of his patrol vehicle to repeatedly place himself in the immediate proximity of Webster's truck as Webster was attempting to exit the Mini-Mart's parking lot; and

　(g)　In other manners to be proved through discovery and at trial.

86. Defendant Collins's actions were corrupt, malicious, and/or perpetrated outside

and beyond the scope of his official duties.

87. As a proximate result of Defendant's wrongful conduct, Webster suffered damages including physical injuries, emotional distress, humiliation, loss of reputation, and death. As a proximate result of Defendant's wrongful conduct, Webster's family members and heirs have suffered damages including the deprivation of the love, companionship, comfort, support, society, care, and sustenance of Webster.

88. As a direct and proximate result of Defendant Collins's wrongful conduct, Webster suffered personal injuries that resulted in his death. Pursuant to N.C. Gen. Stat § 28A-18-2, Plaintiffs Webster-Reed and Reed, as Administrators of the Estate of Brandon Lovell Webster, and on behalf of the Estate and on behalf of those persons entitled to recover wrongful death damages under North Carolina law, are entitled to recover from Defendant Collins compensatory damages for the injuries and subsequent wrongful death of Webster proximately caused by Defendant Collins, including all damages set out in N.C. Gen. Stat § 28A-18-2(b).

89. The conduct of Defendant Collins was willful, wanton, malicious, and done in a manner that demonstrated his reckless disregard for the rights and life of Webster and therefore warrants the imposition of punitive damages.

90. Defendant Collins is liable to Plaintiffs for compensatory and punitive damages, including wrongful death damages.

**COUNT VIII**
**North Carolina Law**
Negligent Infliction of Emotional Distress

91. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth below in this Count VIII.

92. This claim is brought by Webster-Reed in her individual capacity.

93. Defendant Collins negligently caused physical injury and death to Webster when he fired gunshots at Webster, striking him multiple times and eventually killing him. Defendant's negligent conduct includes pre-shooting negligent conduct, actions, inactions and tactics.

94. Defendant acted with negligent and reckless indifference to the likelihood that his conduct would cause severe emotional distress. It was reasonably foreseeable that Defendant's conduct would cause Webster-Reed severe emotional distress.

95. As a proximate result of Defendant Collins's negligence, Webster-Reed suffered serious emotional distress, including but not limited to, severe anguish, fright, nervousness, sleeplessness, nightmares, grief, anxiety, worry, shock, devastation, and despair. Defendant is liable to Plaintiff for compensatory damages.

96. Defendant Collins's wrongful conduct was corrupt, malicious, and/or beyond the scope of his official duties.

97. On information and belief, any ordinary reasonable person would suffer from severe emotional distress from seeing their son fatally shot multiple times, bleeding profusely from his wounds, and dying in their arms.

98. Defendant's actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## **PRAYER FOR RELIEF**

Based on the foregoing, Plaintiffs pray for the following relief:

(1) That the Court declare that Defendant's practices complained of herein are unlawful under the United States Constitution and the law of North Carolina;

(2) That the Court enter judgement in favor of Plaintiffs and against Defendant for

compensatory damages in an amount in excess of $25,000, with the exact amount of the damages to be determined by a jury;

(3) That the Court enter judgement in favor of Plaintiffs and against Defendant for punitive damages in an amount in excess of $25,000, with the exact amount of the damages to be determined by a jury;

(4) That the Court award Plaintiffs pre- and post-judgment interest;

(5) That the costs of this action be taxed against Defendant;

(6) That the Court award Plaintiffs reasonable attorneys' fees as provided by 42 U.S.C. § 1988;

(7) That the Court grant Plaintiffs a trial by jury; and

(8) For such other further relief as the Court deems just, proper, and appropriate.

This 21st day of September, 2021.

PATTERSON HARKAVY LLP

/s/ Bradley J. Bannon
Bradley J. Bannon, NC Bar No. 24106
bbannon@pathlaw.com
Narendra K. Ghosh, NC Bar No. 37649
nghosh@pathlaw.com
Paul E. Smith, NC Bar No. 45014
psmith@pathlaw.com
100 Europa Dr., Suite 420
Chapel Hill, North Carolina 27517
(919) 942-5200

/s/Ira Braswell IV
Ira Braswell IV, NC Bar No. 41799
BRASWELL LAW, PLLC
P.O. Box 703 Louisburg, NC 27549
Telephone: (252) 458-2203
Facsimile: (980) 225-0132

*Attorneys for Plaintiffs*