# Exhibit 1

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made and entered by and between Mary Towanda Webster-Reed, individually and as the personal representative of the Estate of Brandon Lovell Webster; Aldridge Reed, as co-representative of the Estate of Brandon Lovell Webster; K.W., a minor, by and through her Guardian Ad Litem, Rick Parrotte; B.W., a minor, by and through his Guardian Ad Litem, Ryan Smithwick; and Z.L., a minor, by and through his Guardian Ad Litem, Preston Hilton (collectively, "Plaintiffs") and the North Carolina Department of Public Safety ("NCDPS"), on behalf of itself; the North Carolina State Highway Patrol ("NCSHP"), on behalf of itself; the State of North Carolina; and Defendant, Scott Anthony Collins, ("Defendant") (collectively hereinafter referred to as "Released Parties").

WHEREAS, Plaintiffs filed a complaint (the "Complaint") against Defendant in the United States District Court for the Eastern District of North Carolina (the "Court") in Case No. 7:20-cv-248-FL (the "Civil Action"). The Civil Action arose from the Defendant's shooting and killing of Brandon Lovell Webster on January 1, 2019.

WHEREAS, Defendant is a former employee of NCSHP.

WHEREAS, Brit Global Specialty USA (the "Insurance Carrier") issued a policy to the North Carolina Public Officers and Employees Liability Insurance Commission ("POELIC") and All Persons Under the North Carolina Defense of State Employees Act for the years related to Defendant's conduct described in the Complaint.

WHEREAS, the Released Parties desire in order to avoid further controversy, expense, and inconvenience regarding the disputes currently at issue between the parties arising out of the death of Brandon Lovell Webster; and

NOW THEREFORE, in consideration of the mutual promises recited herein, the Released Parties hereby memorialize their agreement to the following terms and conditions:

1. <u>Payment</u>. NCDPS shall pay the amount of Two Million, Two Hundred Thousand Dollars ($2,200,000) in the manner set forth in Exhibit A to this Agreement, which is attached hereto and incorporated herein by reference, within thirty (30) days of the Court's approval of this Settlement Agreement. It is understood and agreed that the Plaintiffs are solely responsible for federal and/or state tax due on the settlement amounts paid and the consideration provided pursuant to this Agreement. Defendant, NCSHP or NCDPS make no representations or warranties regarding the tax obligations or liabilities concerning the settlement amount.

2. <u>Payment of Fees and Cost</u>: In consideration of the mutual promises recited herein and the mutual releases granted herein, each party hereto shall bear all attorney's fees and costs arising from the actions of its own counsel in connection with the Civil Action, this Settlement Agreement, its approval and the matters and

documents referred to herein, the filing of a Dismissal of the Civil Action, and all related matters.

3. <u>Waiver and Release.</u> Based upon the consideration recited above, Plaintiffs and the Estate of Brandon Lovell Webster hereby completely release and forever discharge Defendant, in his individual and official capacities, as well as NCDPS, NCSHP and the State of North Carolina and its agencies, and all current and former officers, agents and employees of the above named entities (in both their official and individual capacities), and all successors of the above named entities from any and all claims, actions, causes of action, demands, rights, damages, costs, sums of money, accounts, covenants, contracts, promises, attorney fees and all liabilities of any kind or nature whatsoever at law, in equity, or otherwise, which the Plaintiffs, the Estate or any agent, heir, representative, or successor-in-interest thereof, ever had, may have ever had, now has, or may have in the future against the Released Parties related to, arising from, or in any way connected to death of Brandon Lovell Webster or the events that occurred on January 1, 2019, including and without limitation, the claims asserted in the Civil Action, or which could have been asserted therein, including and not limited to claims for personal injury, bodily injury, wrongful death, loss of services or companionship, or state or federal constitutional violations.

4. <u>Dismissal of Lawsuit.</u> In consideration for the payment and contribution by NCDPS recited above, Plaintiffs agree to dismiss with prejudice the Civil Action within fifteen (15) days of receipt of the payment specified in Paragraph 1, and to withdraw, in addition to what is described above, any other active lawsuits, charges of wrongdoing, complaints, or other actions with any state or federal agency based upon the said matters.

5. <u>Nature of Release.</u> Plaintiffs acknowledge and agree that the release and discharge set forth above is a general release and is intended to have the broadest possible application. Plaintiffs expressly waive and assume the risk of any and all claims for damages which exist as of this date, but of which the Plaintiffs do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect the Plaintiffs' decision to enter into this Settlement Agreement.

6. <u>Compromise of a Disputed Claim.</u> Each party understands and agrees that this settlement is a compromise of disputed issues of law and fact. The Plaintiffs assume the risk that the facts or law may be other than the Plaintiffs believe. Each party also understands and agrees no covenant herein is to be construed as an admission of liability by any of the Released Parties, all of whom expressly deny liability or wrongdoing.

7. <u>Full Cooperation</u>. The parties agree to cooperate fully to execute any and all supplementary documents necessary to effectuate this Agreement, and to take all additional actions that may be necessary to give full force and effect to the terms of this Agreement, including all actions necessary to obtain the Court's approval of this Agreement.

8. <u>Right to Elect to Direct Payment to an Annuity</u>. The parties agree that the Plaintiffs may direct NCDPS to pay a portion or all of the settlement funds directly to an Annuity Issuer(s) of their own choosing. Any such annuity issuer, must have an AM Best rating of A+ or higher. The parties agree to execute any of the necessary and required documents in order to effectuate the funding and establishment of said annuities as directed.

9. <u>Construction of Entire Agreement</u>. This Agreement contains the entire agreement between the parties and there are no understandings or agreements, verbal or otherwise, regarding this settlement except as expressly set forth herein.

10. <u>Governing Law</u>. It is agreed, between the parties, that this Agreement shall be governed by, construed and enforced in accordance with the laws of the State of North Carolina.

11. <u>Representation of Comprehension of this Agreement</u>. In entering into this Settlement Agreement, Plaintiffs represent that they have relied upon the advice of their own attorneys, who are the attorneys of their own choice, concerning the legal and income tax consequences of this Settlement Agreement; that the terms of this Settlement Agreement have been completely read and explained to the Plaintiffs by their attorneys; and that the terms of this Settlement Agreement are fully understood and voluntarily accepted by the Plaintiffs.

12. <u>Severability</u>. If any of the provisions of the Agreement are determined to be invalid or unenforceable, that provision so determined shall be severable from the other provisions of the Agreement, and the Agreement shall be construed and enforced as if such invalid or unenforceable provision had not been included herein.

13. <u>Signatures and Execution.</u> The parties agree that facsimile and electronic signatures shall be treated as original signatures. The Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same Agreement.

14. <u>Warranty of Capacity to Execute Agreement.</u> Plaintiffs represent and warrant as follows: (1) that Mary Towanda Webster-Reed and Aldridge Reed are the duly appointed representatives of the Estate of Brandon Lovell Webster; (2) that

DocuSign Envelope ID: 2C73815D-2A95-4C36-A54E-88AB55FB1DE5

Settlement Agreement and Release: Webster-Reed v. Collins, 7:20-cv-248-FL
Page 4

Plaintiffs have full authority to enter into this Agreement; (3) that this Agreement shall be binding on all beneficiaries of the Estate of Brandon Lovell Webster, and that such beneficiaries consent to this Agreement; and (4) that none of the claims that are subject to this Agreement have been assigned to any other person or entity. Plaintiffs shall hold harmless, indemnify, and defend the released parties from any cause of action brought by any person or entity seeking to recover damages associated with this settlement up to the amount paid in this settlement.

15. <u>Drafting of this Settlement Agreement.</u> This Settlement Agreement is entered into after negotiations by the parties and their respective counsel. For purposes of construing this Settlement Agreement, all parties shall be considered authors with an equal responsibility for drafting the document.

IN WITNESS WHEREOF, this Settlement Agreement and Release of All Claims is executed as indicated below.

*Towanda Reed*
Mary Towanda Webster-Reed,
individually and as the personal representative of the Estate of Brandon Lovell Webster

3/9/2023
DATE

*Aldridge Reed*
Aldridge Reed,
as co-representative of the Estate of Brandon Lovell Webster

3/9/2023
DATE

*Richard Parrotte*
Rick Parrotte,
on behalf of and as Guardian Ad Litem for K.W.

3/10/2023
DATE

DocuSign Envelope ID: 2C73815D-2A95-4C36-A54E-88AB55FB1DE5

Settlement Agreement and Release: Webster-Reed v. Collins, 7:20-cv-248-FL
Page 5

*Ryan Smithwick* (DocuSigned)
Ryan Smithwick,
on behalf of and as Guardian Ad Litem for B.W.

3/9/2023
DATE

*Preston Hilton* (DocuSigned)
Preston Hilton,
on behalf of and as Guardian Ad Litem for Z.L.

3/10/2023
DATE


**FOR NCDPS:**

Eddie M. Buffaloe, Jr., Secretary

3-6-2023
DATE

# Exhibit A

# EXHIBIT A to the
# SETTLEMENT AGREEMENT AND RELEASE

**1.0 Payments**

In consideration of the releases set forth in the foregoing Settlement Agreement and Release, NCDPS shall pay the following amounts for the reasons set forth below:

1.1 The sum of $1,321,661.90 shall be paid to the Trust Account of the law firm, Patterson Harkavy LLP for attorneys' fees, costs, expenses and liens with the remaining balance payable for the benefit of the intestate heirs of the Estate of Brandon Lovell Webster, as follows:

  (a) The sum of $50,910.58 shall be payable to the K███ W███ Irrevocable Trust as an initial deposit to create said Trust;

  (b) The sum of $120,125.10 shall be payable to the B███ W███ Irrevocable Trust as an initial deposit to create said Trust; and

  (c) The sum of $101,580.78 shall be payable to the Z███ L███ Irrevocable Trust as an initial deposit to create said Trust.

1.2 The sum of $540,193.00 shall be paid to USAA Annuity Services Corporation (the "Assignee") to fund the purchase of two (2) Internal Revenue Code Section 130(c)-qualified structured settlement annuities from USAA Life Insurance Company (rated A++XV by A.M. Best's rating service), which annuities shall make certain future periodic payments ("Periodic Payments"), as follows:

  **(a) Payee: B███ W███ Irrevocable Trust**:

  (i) TWENTY-FIVE THOUSAND DOLLARS AND 00/100 ($25,000.00) payable semi-annually, guaranteed for 4 years, beginning June 1, 2036, with the last guaranteed payment on December 1, 2039;
  (ii) FIVE HUNDRED DOLLARS AND 00/100 ($500.00) payable monthly, guaranteed for 4 years, beginning June 1, 2036, with the last guaranteed payment on May 1, 2040;
  (iii) ONE THOUSAND FOUR HUNDRED AND FORTY-EIGHT DOLLARS AND 79/100 ($1,448.79) for life, payable monthly, guaranteed for 30 years, beginning July 1, 2040, with the last guaranteed payment on June 1, 2070; and
  (iv) TWENTY-FIVE THOUSAND DOLLARS AND 00/100 ($25,000.00) paid as a guaranteed lump sum on June 1, 2040.

(b) **Payee: Z▮▮▮▮▮▮▮ L▮ Irrevocable Trust**:

TWO THOUSAND THREE HUNDRED AND NINETY-FIVE DOLLARS AND 83/100 ($2,395.83) for life, payable monthly, guaranteed for 40 years, beginning May 12, 2037, with the last guaranteed payment on April 12, 2077.

1.3 The sum of $338,145.10 shall be paid to Mutual of Omaha Structured Settlement Company (the "Assignee") to fund the purchase of an Internal Revenue Code Section 130(c)-qualified structured settlement annuity from United of Omaha Life Insurance Company (rated A+XV by A.M. Best's rating service), which annuity shall make the certain future periodic payments ("Periodic Payments"), as follows:

**Payee: K▮▮▮▮ W▮▮▮▮▮ Irrevocable Trust:**

(i) FIFTEEN THOUSAND DOLLARS AND 00/100 ($15,000.00) payable semi-annually, guaranteed for 4 years, beginning June 1, 2027, with the last guaranteed payment on December 1, 2030;

(ii) FIVE HUNDRED DOLLARS AND 00/100 ($500.00) payable monthly, guaranteed for 4 years, beginning June 1, 2027, with the last guaranteed payment on May 1, 2031;

(iii) TWENTY-FIVE THOUSAND DOLLARS AND 00/100 ($25,000.00) paid as a guaranteed lump sum on March 31, 2031;

(iv) FIFTY THOUSAND DOLLARS AND 00/100 ($50,000.00) paid as a guaranteed lump sum on March 31, 2034;

(v) FIFTY THOUSAND DOLLARS AND 00/100 ($50,000.00) paid as a guaranteed lump sum on March 31, 2039;

(vi) ONE HUNDRED THOUSAND DOLLARS AND 00/100 ($100,000.00) paid as a guaranteed lump sum on March 31, 2044; and

(vii) ONE THOUSAND TWO HUNDRED AND EIGHTY-FOUR DOLLARS AND 83/100 ($1,284.83) for life, payable monthly, guaranteed for 30 years, beginning March 31, 2042, with the last guaranteed payment on February 29, 2072.

**2.0 Claimant's Right to Payments**

None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be:

i. Accelerated, deferred, increased or decreased by the Payees;

ii. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in accordance with applicable federal law and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

No Claimant, Payee, or Successor Payee shall have the power to affect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above, the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

**3.0 Payee's Beneficiary**

Any payments to be made after the death of the Payees in accordance with the terms of this Release shall be made to the beneficiary or beneficiaries designated herein or to such beneficiary or beneficiaries as may be requested in writing by the Payees to the owner of the annuity. If no beneficiary is designated herein or requested by the Payees, the payments shall be made to the estate of the surviving Payee. No request made under this section nor any revocation thereof shall be effective unless it is in writing, executed by the surviving Payees, and delivered to the owner of the annuity. The designation must be in a form acceptable to the Assignee before such payments are made.

**4.0 Consent to Qualified Assignment**

4.1 The Representatives of the Estate of Brandon Lovell Webster (the "Representatives") and the Payees acknowledge and agree that NCDPS shall make a "qualified assignment" to USAA Annuity Services Corporation (the "Assignee") of any liability to make the Periodic Payments specified in Sub-Section 1.2 above. The Representatives and the Payees, in addition to a duly-authorized representative of NCDPS, agree to execute the qualified assignment, including any release language contained therein, as necessary to effectuate the qualified assignment.

4.2 The Representatives of the Estate of Brandon Lovell Webster (the "Representatives") and the Payees acknowledge and agree that NCDPS shall make a "qualified assignment" to Mutual of Omaha Structured Settlement Company the "Assignee") of any liability to make the Periodic Payments specified in Sub-Section 1.3 above. The Representatives and the Payees, in addition to a duly-authorized representative of NCDPS, agree to execute the qualified assignment, including any release language contained therein, as necessary to effectuate the qualified assignment.

4.3     The qualified assignment, once made, shall be accepted by the Representatives on behalf of the Estate and the Payees without right of rejection and shall completely release and discharge NCDPS and the Released Parties from the Periodic Payments obligation assigned to the Assignee. The Representatives and the Payees recognize that, pursuant to the qualified assignment, the Assignee shall be the <u>sole obligor</u> with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of NCDPS, Defendant and the Released Parties shall thereupon become final, irrevocable and absolute.  In the event the Assignor becomes the owner of the annuity contract in the future by a lawful Order of a court with competent jurisdiction, said ownership will immediately be transferred to the Payees.

**5.0 Right to Purchase an Annuity**

The Assignee reserves the right to purchase annuity policies from USAA Life Insurance Company to fund the Periodic Payments specified in Sub-Section 1.2 above. Assignee shall be the sole owner of the annuity policies and shall have all rights of ownership. Assignee may have USAA Life Insurance Company mail payments directly to the Payees. The Payees shall be responsible for maintaining a current mailing address with the Annuity Issuer. NCDPS shall provide a structure funding check in the amount of $540,193.00 to fund the future periodic payment obligation set forth above to be delivered to the Assignee in a timely manner and no later than 30 days after the Court's approval of the Settlement Agreement.

The Assignee reserves the right to purchase annuity policies from United of Omaha Life Insurance Company to fund the Periodic Payments specified in Sub-Section 1.3 above. Assignee shall be the sole owner of the annuity policies and shall have all rights of ownership. Assignee may have United of Omaha Life Insurance Company mail payments directly to the Payees. The Payees shall be responsible for maintaining a current mailing address with the Annuity Issuer. NCDPS shall provide a structure funding check in the amount of $338,145.10 to fund the future periodic payment obligation set forth above to be delivered to the Assignee in a timely manner and no later than 30 days after the Court's approval of the Settlement Agreement.

**6.0 Discharge of Obligation**

The obligation of the Assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payees or the deposit by electronic funds transfer in the amount of such payment to an account designated by the Payees.